KARTHAUS (ARDREY v.). See Case No. 511.

---

## Case No. 7,615.

### KARTHAUS v. FRICK.

[Taney, 94.] [1]

Circuit Court, D. Maryland. April Term, 1840.

CUSTOMS DUTIES—WHOLE ARTICLE—DUTY ON VESSEL CONTAINING DUTIABLE ARTICLE.

1. The charge of a specific duty upon an article in a particular form or vessel, is a charge upon the whole article, as described, including the vessel or material described as containing it.

2. The act of congress of 10th February 1820 [3 Stat. 541], has no connection with the tariff act of 1832 [4 Stat. 583], and cannot affect its construction.

3. The tariff act of 1832, in imposing a specific duty upon salt of 10 cents per 56 pounds, did not intend that the sacks in which the salt is imported, should be subject to an additional ad valorem duty.

[Cited in Schmidt v. Badger, 107 U. S. 89, 1 Sup. Ct. 534.]

4. The court cannot undertake to infer such an intention, merely because the relative value of the sacks, compared with the salt they contain, is much larger than that which the vessel or outside wrapper usually bears to the merchandise imported in it.

This was an action, instituted [by Charles W. Karthaus] on the 6th of April, 1840, against [William Frick] the collector of the port of Baltimore, to recover back certain duties paid under protest.

Charles F. Mayer, for plaintiff.

N. Williams, Dist. Atty., for defendant.

TANEY, Circuit Justice. The question in this case arises under the act of the 14th of July, 1832, in relation to the duty on salt. The seventeenth clause of the second section imposes the duty in the following words: "On salt, ten cents per fifty-six pounds."

It appears from the evidence, that for the last ten or twelve years, and perhaps longer, Liverpool salt has been imported altogether in bags, or sacks, containing four bushels of salt; that coarse salt is imported sometimes in sacks, and sometimes in bulk, but that Liverpool salt, which is fine salt, is never imported otherwise than in sacks; and that this has been the usage of the trade for the time above mentioned. The sack of

salt is worth about $2 wholesale, and about $2.25 by retail; and the sack itself when emptied and washed, is worth from 25 to 37½ cents, and when the material of which it is made is very good, a bag has sometimes been sold for 50 cents.

The construction given to the law of 1832, at the custom-house of this place, at the time of its passage, was, that all salt paid the specific duty above mentioned, and that the bags in which the fine salt was imported, were merely used as receptacles for the salt, like bags containing coffee, or hogsheads or barrels containing sugar or liquors, and that no duty was charged upon them.

In the last year, however, a different rule was adopted by the treasury department, and the collector, under instructions from Washington, now charges an ad valorem duty on the sacks, as manufactures of hemp, in addition to the specific duty charged upon the salt. The plaintiff having received a quantity of salt, in the usual mode, from Liverpool, was charged with duty on the bags as above-mentioned, and having paid the amount claimed, under protest, has brought this suit to recover it from the collector.

It appears from the clause in the law above quoted, imposing this duty, that no difference is made in the amount of it, whether the salt is imported in bulk or in bags. It is, moreover, a specific duty of ten cents upon the fifty-six pounds, without any reference to the value of the article. Inasmuch as it was the established custom, at the time this law was passed, always to import the fine salt in bags, congress must be presumed to have been fully apprised of it, and to have legislated with a full knowledge of the usual course of trade.

The material in which merchandise is usually packed for the purpose of secure and convenient transportation, has not, in general, been the subject of a separate impost. When the vessel containing the article is also a subject of commerce, the specific duty has been made higher upon the merchandise thus imported, in consideration of the value of the vessel that contains it; but we are not aware of any instance in which a separate ad valorem duty has been laid upon the vessel or receptacle in which it is contained, when a specific duty is laid upon the merchandise. Thus, for example, in the twenty-third clause of the second section, the red wines of France, in casks, are charged with a specific duty of six cents per gallon; white wines, in casks, ten cents per gallon, and all French wines, in bottles, 22 cents per gallon. The duty, it will be observed, in this clause, is laid upon the wine in the bottles, and not upon the bottles containing it; but in the twenty-first clause of the same section there is also a specific duty upon bottles; yet it has never been supposed that, in addition to the duty imposed upon the wine imported in bottles, the separate

---

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

duty imposed upon the bottles in the twenty-first clause was also to be levied.

So. in the case before us, if the law had said. "upon salt imported in sacks, and upon salt imported in bulk," ten cents per fifty-six pounds, it would have been evident, that the sacks were not liable to an additional duty as manufactures of hemp, for the same reason that bottles do not pay a duty, in addition to that imposed upon the wine imported in them. The charge of a specific duty upon an article in a particular form or vessel, is a charge upon the whole article as described, including the vessel or material described as containing it.

It is true that, in this case. the law does not, in express terms, say, that the duty of ten cents per fifty-six pounds is imposed upon salt in bags, and salt in bulk; but at the time the law was passed, it was the established course of trade to import fine salt in sacks; and as the duty is imposed generally upon every fifty-six pounds of salt, it must be understood to mean salt imported in the manner then usual, and, consequently, to refer to salt in bags as well as in bulk, and receive the same construction as if both modes were expressly mentioned.

It has been suggested, that the act of 10th February, 1820, is to be taken in connection with the provision now in question in the act of 1832; that by the eighth section of the first-mentioned law, the value of the articles subject to a specific duty is to be ascertained in the same manner as the value of imports subject to duty ad valorem; that this provision is to be taken in connection with the fifteenth section of the act of 1832, which declares that in ascertaining the ad valorem duty, "all charges except insurance," shall be added to the value of the goods; and as the sacks would have been added as a part of the charges, if the duty on salt had been an ad valorem duty, it is contended, that they ought still to be added, by virtue of the above provision in the act of 1820.

We do not perceive any ground upon which this act can be supposed to be entitled to any influence on the question before us. It has no connection whatever with the imposition of duties upon goods imported, and does not relate to that subject; its object is, to provide for obtaining accurate statements of the foreign commerce of the United States, and is so declared in its title; the tenth section provides that the value of the imports, into the United States, shall be estimated according to their value at the foreign ports from which they are imported, and not at their value in this country; and the eighth section, referred to as above, merely adopts the same rule to ascertain the value of the goods imported. which are liable to specific duties. The great object of that law is. to obtain an accurate statement of the nature. quantity and value of our various exports and imports; and not to regulate the duty upon them. Indeed, if this supposed connection could be made out between the act of 1820 and the tariff law of 1832, and if the eighth section of the former could have the effect claimed for it, upon articles subject to specific duties, the same process of argument would make it operate upon goods declared to be free, and make them chargeable with an ad valorem duty; for the seventh section of the act of 1820 contains the same provision, in relation to free goods, that the eighth section does in relation to those charged with specific duties. But it is evident that the act of 1820 has no connection with the act of 1832; that the former was passed for a purpose entirely different from that of the latter; and that neither of the sections above-mentioned has any concern with the amount of duty to be paid by merchandise of any description, nor with the mode or the principles by which that amount is to be calculated or ascertained.

It is certain, that the relative value of the sack or material, in which the merchandise is, in this case, imported, is unusually large; the bag bears a far less relative value to the coffee which it contains, and so does the hogshead to the sugar, and the cask to the wine imported in it. But, whether upon account of this large relative value, policy requires that an ad valorem duty should be imposed on the sacks containing fine salt, in addition to the specific duty imposed on the article itself, is a question upon which congress has the right to decide; we can do nothing more than judge of their intention, by the laws they have passed on the subject. In no instance has congress imposed a duty on the vessel, material, or outside wrapper or package, in which merchandise was imported, charged with a specific duty; and in this case, they have used no language indicating any intention on the part of the legislature. to adopt a different rule in relation to salt imported in sacks. The court cannot undertake to infer such an intention, merely because the relative value of the sacks, compared with the salt they contain, is much larger than that which the vessel or outside wrapper usually bears to the merchandise imported in it; the influence which this circumstance should have, is a question for the legislature. and will not authorize the court to distinguish this article from the vessels and outside wrappers or packages of other imported merchandise.

If there was any reason for supposing that the salt was packed in bags. in order to introduce them, as an article of commerce, duty free, it would present a very different question; but nothing of that sort is suggested, nor is there the least evidence to create a suspicion, that anything unfair is intended in this mode of importation. The trade in fine salt is evidently carried on as it was before the tariff act of 1832; and it is imported in bags, because it is found to be

most suitable, in that form, for sale, and for transportation from place to place. The sacks do not appear to have ever been regarded as things out of which a profit was expected, and there is never any regular market price for them; they are sold like sugar-hogsheads, and other casks, for the best price that can be gotten, as occasional opportunities may offer.

In our judgment, therefore, these sacks are not liable to be charged with the ad valorem duty now demanded; we think the construction heretofore given to the act of 1832, in relation to this subject, is the true one, and that the opposite construction, more recently adopted, cannot be sustained. As the duties in question were paid under protest, the plaintiff is entitled to recover back the amount of the money so paid by him.