## SPIELMAN *v.* UNITED STATES (No. 267).[1]

1. PAPIER-MÂCHÉ BOXES.

Separate provision is made by paragraph 418, tariff act of 1909, for boxes made wholly or in chief value of paper or papier-mâché, if covered with surface-coated paper; but such an *eo nomine* designation can not be taken to exclude the article so designated from an applicable part of the customs law enacted to simplify administration and to minimize frauds on the revenue.

2. SAME—CONTAINING NETTINGS.

The provisions of existing law relative to containers impose a duty, for example, on boxes, as boxes alone, when these are imported as merchandise. When they are brought in as usual containers of ad valorem goods they are subject to the specific administrative provision applicable to them when used in that way; and boxes covered with surface-coated paper and composed wholly or in chief value of paper or papier-mâché, containing nettings, are dutiable under paragraph 18, section 28, tariff act of 1909, as usual containers.

### United States Court of Customs Appeals, May 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23441 (T. D. 30667).

[Affirmed.]

*Brown & Gerry* for the appellants.
*D. Frank Lloyd,* Assistant Attorney General (*William A. Robertson* on the brief), for the United States,

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

During the month of October, 1909, certain nettings were imported into the country at the port of New York in boxes covered with surface-coated paper and composed wholly or in chief value of paper or papier-mâché. The collector of customs added the value of the boxes to that of the nettings, and on the total value thus made up assessed a duty of 60 per cent under the provisions of paragraph 402 and subsection 18 of section 28 of the tariff act of August 5, 1909, the pertinent parts of which read as follows:

402. * * * Nettings * * * composed of silk, or of silk and metal, or of which silk is the component material of chief value, * * * sixty per centum ad valorem.

SEC. 18. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the

---

[1] Reported in T. D. 31626 (20 Treas. Dec., 1074).

duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, *including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids,* and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use or otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported.   * * *

The importer made no complaint as to the rate of duty imposed on the goods, but did protest that the value of the boxes should not have been added to the value of the goods and that the boxes should have been separately assessed for duty in the alternative under various paragraphs of the act, among them paragraphs 411 and 418, the pertinent parts of which read as follows:

411. Papers with coated surface or surfaces, not specially provided for in this section, five cents per pound;  * * . *  bags, envelopes, printed matter other than lithographic, and all other articles composed wholly or in chief value of any of the foregoing papers, not specially provided for in this section, and all boxes of paper or wood covered with any of the foregoing paper, five cents a pound and thirty per centum ad valorem.  * * * .

418. All boxes made wholly or in chief value of paper or paper-mâché, if covered with surface-coated paper, forty-five per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

The appellants now argue that boxes of paper or papier-mâché are more specifically provided for under paragraph 418 than under subsection 18 of section 28, and that therefore they should be assessed for duty under the paragraph and not as directed by the subsection.

We hardly think that any question of relative specificity can arise between a paragraph of the tariff law proper and a section of the administrative part of the act. In our opinion, the real issue to be resolved here is whether a mere designation in the body of the tariff act of any of the articles mentioned as containers or coverings in subsection 18 is by itself enough to remove them from the operation of the administrative provision and subject them to the duties prescribed by the tariff.

Whether certain containers and certain coverings should or should not be considered a part of the value of the ad valorem goods which they contain or cover has been several times a subject of legislative

discussion. From March, 1823, to March, 1865, Congress elected to regard covering and packing charges as elements of the dutiable value of imported goods. In March, 1865, it changed its mind and repealed the provision which added the value of the container or covering to the value of ad valorem merchandise. The results of this repeal were evidently unsatisfactory, inasmuch as some 16 months later the value of the box, sack, or covering containing ad valorem goods was again made a part of their dutiable value. In 1883 there was a return to the rule of 1865, and it was expressly provided that the value of the usual and necessary sacks, crates, boxes, or coverings of ad valorem goods should not be estimated as a part of the value of the wares which they contained. There the matter rested until 1890, when Congress seems to have made a careful investigation, as a result of which it evidently came to the conclusion that good customs administration required that the value of certain containers and coverings should, as a general proposition, be regarded as a part of the value of the articles held by them. At all events, it seems to have committed itself to that policy to a certain extent by the act of June 10, 1890, and since the passage of that act there has been no general return to the policy of considering ad valorem goods and the coverings and containers thereof as separate entities for tariff purposes. In fact, the practice of so considering them appears to have caused so much embarrassment to appraising officers and to have been productive of so much trouble, fraud, and litigation, that in later years the legislative tendency has been all the other way. See Austin, Nichols & Co. *v.* United States (171 Fed. Rep., 79–80). Indeed, subsection 18 of section 28 of the act of August 5, 1909, enlarges section 19 of the act of June 10, 1890, so as to include casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids. From this extension of the language of the act of June 10, 1890, it may be fairly concluded that the Legislature has definitely settled to its satisfaction that for the ascertainment of dutiable value it is not practicable, generally speaking, to separate ad valorem goods from their usual containers or coverings, and that for tariff purposes the value of such containers or coverings should, as a rule, be considered as a part of the value of the goods.

In view of this history of the legislation on the subject of usual containers of ad valorem goods and of the apparently settled general policy finally adopted with regard to them, it would seem that the boxes under discussion, which are admittedly the usual containers of the nettings, should be dealt with as prescribed by subsection 18 of section 28 of the tariff act of August 5, 1909, unless they have been excluded from its operation by some other provision of law

which is controlling. Whether this particular class of containers is so excluded is therefore the question to be determined, and the solution of that question depends upon the construction to be given to paragraphs 411 and 418. If from either paragraph it can be fairly concluded that there was an intention to impose a separate duty on the boxes whether acting as usual containers or not, of course that intention should prevail against the subsection, the governing purpose of which is more to establish a rule of administration than to fix duties. United States v. Nichols (186 U. S., 298, 302–303).

Where articles available for use as containers have been subjected by a paragraph of the tariff act proper to duty "if filled with articles" or "whether full or empty" or "whether filled or unfilled, and whether their contents be dutiable or free," or where they have been expressly excepted from additional duty by such paragraph, the courts have held that such articles are thereby removed from the class of usual containers, and that they must be dealt with as prescribed by the paragraph. United States v. Leggett (66 Fed. Rep., 300); United States v. Ross (91 Fed. Rep., 108); United States v. Dickon (73 Fed. Rep., 195); United States v. Marx & Rawolle (1 Ct. Cust. Appls., 152; T. D. 31210); Schmidt v. Badger (107 U. S., 85).

So far as we have been able to discover, however, there is no decision to the effect that the eo nomine designation of an article which may be used as a container is by itself enough to exclude the article from that part of the customs law which is designed to minimize frauds on the revenue and to simplify administration. While paragraphs 411 and 418 impose a duty on paper boxes and boxes of papier-mâché, they do not in terms impose a duty on such boxes "filled with articles" or "whether full or empty" or "filled or unfilled" and therefore it can not be inferred that Congress was there dealing with them as containers. We think the purpose of the paragraphs was to impose a duty on these boxes only when they are imported as merchandise and that when they are imported as usual containers of ad valorem goods they should be subjected to the specific administrative provision which covers them when serving in that capacity. Such an interpretation of the paragraphs maintains the general policy as to usual containers, gives effect to both tariff and administrative provisions, and seems to us more reasonable than a construction not in line with the decided cases above cited and unsupported by the language which Congress has customarily used when it has thought it advisable to levy a separate duty on containers in a paragraph of the tariff act proper.

The decision of the Board of General Appraisers is therefore *affirmed.*