UNITED STATES *v.* AMERICAN RAILWAY EXPRESS CO. (No. 2109).[1]

1. USUAL COVERINGS AND CONTAINERS.

It is the general rule that, in the absence of a clear legislative intent to the contrary, the usual coverings and containers of free merchandise are themselves entitled to free entry.

2. CREAM CAN JACKETS.

Jackets of felt and cotton, used on cream cans to keep constant the temperature of the cream, are shown to be usual coverings, and are admissible free of duty with the cream.

## United States Court of Customs Appeals, December 14, 1921.

APPEAL from Board of United States General Appraisers, Abstract 44184.

[Affirmed.]

*Wm. W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell,* special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument Oct. 29, 1921, by Mr. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

This case arises upon an importation of sweet cream from Canada. The cream was transported in 8-gallon metal cans, which were covered by so-called "can jackets." These are detachable covers made of cotton and felt. They are strapped over and around the cans, and are designed to preserve the cream at an even temperature while in transit.

The collector rightly admitted the cream itself to free entry under paragraph 547, tariff act of 1913. The metal cans, however, he assessed with duty at the rate of 20 per cent ad valorem as cylindrical iron vessels for holding liquids whether full or empty, under paragraph 127 of the act; at the same time assessing the jackets with duty at the rate of 30 per cent ad valorem under the provision for manufactures of which cotton is the component material of chief value, in paragraph 266 of the act.

The importers protested against the assessments, claiming that the cans and jackets were the usual containers or coverings of the cream when imported and that they, like their contents, were entitled to free entry.

The protest was submitted upon testimony to the Board of General Appraisers, and a decision was announced sustaining it in so far as it related to the jackets, without mention, however, of the question raised in relation to the cans. The Government has ap-

[1] T. D. 38968.

pealed from the decision, thus bringing the assessment of the jackets before the court; and that is the only question involved in the appeal.

It may be noted at this point that it is the trade practice when cream is imported into this country from Canada to reship the cans and jackets to the exporters, by whom they are refilled and again exported to this country. They are thus continued in use indefinitely in the trade. And in order to avoid a successive or cumulative assessment of a given can each time it comes into this country, a customs practice obtains whereby cans upon which duty is once paid are designated by a Government seal and are passed free of duty upon reimportation. Whether this practice prevails as to the jackets as well as the cans does not appear in the record, nor have we any information upon that point in the tariff act or the department's regulations. The practice, indeed, appears to be founded simply upon the theory of ex necessitate. The importers, however, say in their brief that "it certainly is manifestly unjust and inequitable to treat them (the jackets) for tariff purposes as unusual coverings and require the importers to pay a repeated and cumulative 30 per cent duty on them every time while in use as packing or coverings they cross the border from Canada into the United States." From this statement we infer that in practice such jackets have been assessed with duty successively whenever imported, upon the theory that they were unusual coverings and therefore not entitled to the indulgence which is extended in practice to the cans. However, we do not deem it necessary for us to seek more accurate information upon that point in the present case.

The first question before the court, therefore, is whether the so-called can jackets are the usual containers or coverings for sweet cream when imported into this country. The board has found upon the testimony that they are, and we must examine the record upon that point.

Three witnesses only were examined before the board, and their statements were in complete accord with one another. Their testimony is to the following effect:

When fresh sweet cream is shipped for a considerable distance it is commonly carried in ordinary metal milk cans substantially like those in this case. In order to keep the cream sweet when in transit it should be kept at a temperature of about 40 degrees Fahrenheit; the temperature should never run higher than 48 degrees nor lower than 36. If the shipment comprise a carload lot, that purpose may best be accomplished by the use of a refrigerator car properly iced. But if broken lots are shipped, as is usually the case, the cans should be covered by can jackets as in the present instance, in order to prevent the cream from spoiling in summer time or freezing in winter. The jackets are made of cotton and felt, are about an inch

thick, may be strapped around the can and unstrapped therefrom, and substantially aid in keeping the cream at an even temperature. They are not used for the purpose of protecting the cans, nor to facilitate handling them, but for the benefit of the cream alone. Such jackets have been in common use for this purpose for more than 20 years, and are said by all the witnesses to be absolutely essential to protect the cream from spoiling or freezing while in transit. It is said, however, that sweet milk may be shipped in cans without the protection of such jackets, especially for short distances.

We think that the testimony fully sustains the decision of the board to the effect that the can jackets were the usual containers or coverings for the cream when imported. It was necessary under the circumstances to use them in order to keep the cream in wholesome and salable condition, they were in common bona fide use for this purpose, and they were not designed for nor capable of any other use. It is true that they were not the immediate containers of the cream; nevertheless they were used exclusively to preserve it during transportation, and for no other purpose. In support of this conclusion we may quote from the decision in the case of James A. Hayes & Co. *v.* United States (150 Fed., 63, 69), as follows:

Olive oil in bottles requires not only the bottles as containers, but reed coverings and cases which are necessary to protect the oil itself, by preventing the breaking of the bottles which contain it. The bottles themselves require for their protection no cases or coverings other than those essential for the protection of the olive oil.

See also T. D. 16568, G. A. 3264.

The next question before the court is whether the can jackets are entitled to free entry even though they may be called the usual containers or coverings of the imported cream. The Government contends against their free entry upon the ground that after importation they may be sold or used in this country, since they are not injured or destroyed when first imported, and that thereby the importers are given an opportunity to import such articles free of duty notwithstanding the fact that they respond to an enumeration upon which Congress has levied duty. In support of this contention the Government cites the following decisions of this court, to wit: Pacific Creosoting Co. *v.* United States (1 Ct. Cust. Appls.. 312; T. D. 31407); United States *v.* Garramone (2 id., 30; T. D. 31577); United States *v.* Brown (2 id., 57; T. D. 31596); United States *v.* Geisenheimer & Co. (6 id., 520; T. D. 36144); United States *v.* Bene (6 id., 523; T. D. 36145); United States *v.* Murphy & Co. (9 id., 248; T. D. 38206).

In passing upon the contention of the Government the leading case of Karthaus *v.* Frick (14 Fed. Cas., 136) should first be cited. That case arose under the tariff act of 1832 and dealt with an importation of salt in hemp sacks. The salt was dutiable at the specific rate of 10 cents per 56 pounds, and the sacks if separately imported

would have been dutiable as manufactures of hemp. The sacks when emptied after importation were capable of repeated use and were also salable, being worth from 25 to 37½ cents each, or even 50 cents each when in good condition, the relative value of the sacks as compared with the salt being unusually large. The court remarked, however, that there did not appear to be any regular market price for them but that they were sold like sugar hogsheads and other casks ·for the best price that could be gotten as occasional opportunities might offer. The court nevertheless held the sacks to be free of duty as usual containers of specific-duty merchandise. By way of illustration the court instanced casks and bottles in which specific-duty wines were usually imported, and said, "yet it has never been supposed that, in addition to the duty imposed upon the wine imported in bottles, the separate duty imposed upon the bottles in the .twenty-first clause was also to be levied."

In the course of the decision the court said:

It is certain that the relative value of the sack or material in which the merchandise is in this case imported is unusually large; the bag bears a far less relative value to the coffee which it contains, and so does the hogshead to the sugar, and the cask to the wine imported in it. But, whether upon account of this large relative value, policy requires that an ad valorem duty should be imposed on the sacks containing fine salt, in addition to the specific duty imposed on the article itself, is a question upon which Congress has the right to decide; we can do nothing more than judge of their intention by the laws they have passed on the subject. In no instance has Congress imposed a duty on the vessel, material, or outside wrapper or package in which merchandise was imported charged with a specific duty; and in this case they have used no language indicating any intention on the part of the legislature to adopt a different rule in relation to salt imported in sacks.

The rule thus enunciated has been accepted as applicable also to the usual containers or coverings of free goods as well as specific-duty goods, and accordingly they, like their contents, have been held to be free of duty, except in instances wherein Congress has assessed duty upon them by specific provision or by clear implication. And this rule obtains notwithstanding the fact that in given cases the containers or coverings, like the sacks involved in the foregoing case, may be useful and salable articles when discharged of their contents after importation.

In T. D. 10861, G. A. 356, in a case arising under the tariff act of 1890, Somerville, G. A., said:

Earthenware coverings on free goods are not liable to duty unless they are of some unusual material or form "designed for use otherwise than in the bona fide transportation of such merchandise to the United States." They then become liable under the provisions of section 19 of the act of June 10, 1890. The earthenware bottles in the present case are not of this prohibited class, and are therefore, in our opinion, free of all duty, as the contents are. We find nothing in the present tariff law which authorizes the inference that the usual coverings of merchandise, which is itself free of duty, are taxable, unless in special cases where the law so provides either expressly or by clear implication.

See also T. D. 12108, G. A. 970; T. D. 16831, G. A. 3350; T. D. 23131, G. A. 4947; T. D. 23843, G. A. 5172; Wright & Graham Co. *v.* United States (5 Ct. Cust. Appls., 453; T. D. 34976).

In order, doubtless, to meet the rule announced in the Karthaus case, supra, Congress in various enactments since that time has made specific provisions for various kinds of containers so as to except them from the operation of the general rule, and by means of such provisions certain kinds of coverings and containers are made dutiable even though their contents when imported be free or specific-duty merchandise. These exceptional provisions, however, have not abrogated but rather confirmed the general rule as above stated.

Upon this subject this court by Smith, Judge, in Speelman *v.* United States (2 Ct. Cust. Appls., 61, 64; T. D. 31626), commented as follows:

Where articles available for use as containers have been subjected by a paragraph of the tariff act proper to duty "if filled with articles" or "whether filled or unfilled, and whether their contents be dutiable or free," or where they have been expressly excepted from additional duty by such paragraph, the courts have held that such articles are thereby removed from the class of usual containers and that they must be dealt with as prescribed by the paragraphs.—United States *v.* Leggett (66 Fed., 300); United States *v.* Ross (91 Fed., 108); United States *v.* Dickon (73 Fed., 195); United States *v.* Marx & Rawolle (1 Ct. Cust. Appls., 152; T. D. 31201); Schmidt *v.* Badger (107 U. S., 85; 2 Ct. Cust. Appls., p. 64).

We will not review the history of such enactments but will refer for illustration to the following paragraphs of the tariff act of 1913, to wit:

Paragraph 83 levies duty upon certain descriptions of bottles, vials, jars, demijohns, and carboys, whether "filled or unfilled" and "whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty or to a rate of duty based in whole or in part upon the value thereof which shall be dutiable at the rate applicable to their contents)."

Paragraph 127 levies duty upon cylindrical or tubular iron or steel tanks or vessels, for holding gas, liquids, or other material, "whether full or empty."

It may be observed that the decisions of this court which are cited by the Government as above stated, except that of the Pacific Creosoting Co., were rendered each and all in cases arising under the last foregoing paragraph or its predecessors, and were therefore exceptional in character, since the containers thus described were made dutiable specifically regardless of the character of their contents at importation, whereas in the case of the Pacific Creosoting Co., supra, the court found upon the evidence that the containers then in question were unusual in character and therefore without the rule. For other illustrations of specific provisions in relation to containers, see paragraphs 180, 199, 231, 243, 244, and 245, tariff act of 1913.

It may be observed that there is no specific provision in the tariff act for such jackets as these, "whether filled or empty," and therefore the decisions cited by the Government as aforesaid do not apply. The present articles are governed by the general rule as above expressed.

The foregoing principles and authorities seem to point the way clearly to the proper decision of the present issue. We have found that the can jackets in question were the usual coverings or containers of sweet cream as imported in this instance and that the imported cream was entitled to free entry under the act. We have found the general rule to be that in the absence of a clear legislative intent to the contrary the usual coverings and containers of free merchandise are themselves entitled to free entry. And since there is nothing apparent to withdraw or except the present articles from the general rule it must be held that they as well as their contents were entitled to free entry.

The decision of the board to that effect is accordingly *affirmed*.