(C. D. 1080)

MARQUES DEL MERITO, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 21, 1948)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon* and *John J. McDermott*, special attorneys), for the defendant.

MOLLISON, Judge: The plaintiff in this case, by its protest, claims that certain butts in which sherry wine was imported into the United States are entitled to free entry as the usual containers of specific-duty merchandise. The assessment of duty by the collector, and the incidents leading up to it, are set forth in the following statement of facts agreed upon by counsel at the trial of the case:

1. The importation in question consisted of sherry wine from Spain, including one hundred butts of sherry wine, which are the subject of this stipulation.

2. The butts were not of unusual design, and were not designed for use otherwise than in the bona fide transportation of the wine to the United States. The butts were in chief value of wood.

3. The merchandise in question was entered for warehouse.

4. Thereafter, application was made to repack the merchandise, and the wine was repacked into bottles, pursuant to and in accordance with the provisions of Sec. 562, Tariff Act of 1930, and the pertinent customs regulations.

5. As a result of the repacking of the wine, one hundred empty butts remained in bonded warehouse. Thereafter, the plaintiff was required by the collector of customs to make, and did make, warehouse entries for consumption, for the one hundred empty butts, before obtaining delivery of the empty butts.

6. Upon withdrawal of the empty butts, the collector assessed duties on the empty butts at 7½% ad valorem under Par. 407, Tariff Act of 1930, as modified by the Canadian Trade Agreement, as "Casks, barrels, and hogsheads (empty), of wood, not specially provided for * * *." The duties on the empty butts were assessed upon a value reported on the invoice by the appraiser after the wine was repacked.

Section 562 of the Tariff Act of 1930 (19 U. S. C. 1940 ed., §1562), as amended by the Customs Administrative Act of 1938 (52 Stat. 1077, 1088), is captioned "Manipulation in Warehouse" and reads as follows:

Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided,* That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation to a foreign country or for shipment to the Virgin Islands, American Samoa, or the island of Guam, without payment of the duties, or for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition. The basis for the assessment of duties on such merchandise so withdrawn for consumption shall be the entered value or the adjusted final appraised value, whichever is higher, and if the rate of duty is

based upon or regulated in any manner by the value of the merchandise such rate shall be based upon or regulated by such adjusted final appraised value; but for the purpose of the ascertainment and assessment of additional duties under section 489 of this Act adjustments of the final appraised value shall be disregarded. The scouring or carbonizing of wool shall not be considered a process of manufacture within the provisions of this section. Under such regulations as the Secretary of the Treasury shall prescribe, imported merchandise which has been entered and which has remained in continuous customs custody may be manipulated in accordance with the provisions of this section under customs supervision and at the risk and expense of the consignee, but elsewhere than in a bonded warehouse, in cases where neither the protection of the revenue nor the proper conduct of customs business requires that such manipulation be done in a bonded warehouse.

The wine in question was assessed with duty at the rate of $1.25 per gallon under paragraph 804 of the Tariff Act of 1930. It is the plaintiff's position that the *merchandise* which was repacked in the present case under authority of section 562, *supra*, was the *wine*; that the butts were merely the containers of specific-duty merchandise and entitled to free entry; and that their condition with respect to section 562 was not changed by the repacking of the wine. On the other hand, the defendant contends that the merchandise which was the subject of manipulation under section 562 was *wine in butts;* that that section required the imposition of duty upon merchandise in its condition at the time of withdrawal; and that since the condition of the butts at the time of withdrawal was as empty casks or barrels, which are specifically made dutiable under paragraph 407, *supra*, as amended, the assessment of duty thereon was proper.

Counsel for both parties cite as an axiom the statement that the usual containers of specific-duty merchandise are free of duty. Over one hundred years ago, in the case of *Karthaus* v. *Frick*, reported in 14 Fed. Cas. at page 136, Case No. 7,615, the then Circuit Justice Taney considered the question of the dutiability of usual containers in which merchandise subject to specific duties was imported. The case involved salt imported in sacks. The Tariff Act of 1832 imposed a duty of 10 cents per 56 pounds on salt, and the question arose when the collector of customs at the port of Baltimore, in addition to assessing duty on the salt at the rate stated, also charged an ad valorem duty on the sacks, as manufactures of hemp. It appeared that the sacks, although intrinsically valuable, were the usual containers of such salt, and in holding that they were not separately chargeable with duty, the court pointed out that since it appeared that at the time of the passage of the Tariff Act of 1832 it was the established course of trade to import such salt in sacks, Congress must be presumed to have been fully apprised of the fact and to have legislated with full knowledge thereof, and as the tariff imposition was made upon every 56 pounds of salt, it must be understood to mean salt

imported in the manner then usual, i. e., in sacks. The court observed:

The material in which merchandise is usually packed for the purpose of secure and convenient transportation, has not, in general, been the subject of a separate impost. When the vessel containing the article is also a subject of commerce, the specific duty has been made higher upon the merchandise thus imported, in consideration of the value of the vessel that contains it, but we are not aware of any instance in which a separate ad valorem duty has been laid upon the vessel or receptacle in which it is contained, when a specific duty is laid upon the merchandise.

Of course, there are in the present tariff act numerous instances where a separate duty is laid upon the usual containers of specific-duty merchandise (for example, paragraph 810, imposing a duty upon bottles or jugs containing spirits, wines, or other beverages which are themselves dutiable under schedule 8 of the tariff act), but this merely serves to point up the existence of the general rule laid down in the *Karthaus* case that the usual and necessary coverings of goods subject to specific duties are not themselves dutiable unless such coverings are directly provided for in the tariff act. See in this connection the very able discussion of the subject in the opinion of Judge Martin of the Court of Customs Appeals in the case of *United States* v. *American Railway Express Co.*, 11 Ct. Cust. Appls. 211, T. D. 38968.

Of particular interest, we think, is the reason given by Mr. Justice Taney for the exemption from duty of usual containers of specific-duty merchandise, viz:

\* \* \* When the vessel containing the article is also a subject of commerce, the specific duty has been made higher upon the merchandise thus imported, in consideration of the value of the vessel that contains it \* \* \*.

This principle of customs taxation finds its analogue in the provisions for the assessment of duty on merchandise subject to ad valorem duties. Section 402 of the Tariff Act of 1930, defining value for the purpose, among other things, of the assessment of such duties on imported merchandise, provides that the value of imported merchandise shall include the cost of containers or coverings. Thus, Congress has based the duties to be imposed upon such merchandise upon a value including the cost of such containers, that is to say, has levied duties upon such containers, and it is logical to assume that the provisions imposing specific duties on imported merchandise would likewise take into consideration the cost of containers or coverings.

As applied to the wine and butts here in question, it would appear from the foregoing that an indivisible part of the duties paid on the withdrawal of the wine was referable to the containers. Since the bottles into which the wine was repacked in warehouse were pre-

sumably domestic containers on which no duty was chargeable or paid, it would seem that although the wine and butts were physically separated the duties paid on the withdrawal of the wine would satisfy the taxing intent of the statute with respect to the butts. Moreover, it would seem that if a further duty were chargeable on the butts as contended for by the defendant, there would in effect be a double imposition, which, in consideration of the uniform treatment of containers in tariff legislation, should not be considered to have been the intent of Congress unless express provision or clear implication in favor thereof is to be found in the law.

We have set forth the foregoing in some detail for the reason that we are satisfied that by the provisions of section 562 Congress has manifested its intent to change the ordinary rules regarding the classification of merchandise so as to make the condition upon withdrawal of merchandise manipulated under that section the determinant of its classification. The general rule is that the classification of imported merchandise is determined as of its condition at the time of importation. *Worthington* v. *Robbins*, 139 U. S. 337, and *United States* v. *Shoverling*, 146 U. S. 76.

"Importation" is defined in *Henry Hollander Co.* v. *United States*, 22 C. C. P. A. 645, T. D. 47632, as follows:

Generally, however, and unless the contrary clearly appears, the word "importation" means "the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them." *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052, and cases cited; *Cunard S. S. Co.* v. *Mellon*, 262 U. S. 100.

There is no question but that at the time the wine in butts was brought "within the jurisdictional limits of the United States with the intention to unlade" the butts had the tariff status of usual containers of specific-duty merchandise. The question is, does the "contrary clearly appear," that is to say, has Congress manifested an intention to change the determination of the tariff status, i. e., the classification, of merchandise manipulated under the provisions of section 562, from the time when it entered the jurisdictional limits of the United States with the intention to unlade it to some other time? We are satisfied that it has.

Section 562 very clearly states that manipulated merchandise may be withdrawn from warehouse (1) for exportation without the payment of duties, or (2)

*  *  *  for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse,  *  *  *.

The words "in its condition  *  *  *  at the time of withdrawal from warehouse" obviously refer to the tariff or dutiable status of

the merchandise, i. e., its classification. In the case of *United States* v. *F. B. Vandegrift & Co.*, 17 C. C. P. A. 127, T. D. 43455, certain wool was imported and entered for warehousing. The entry was liquidated thereafter and the merchandise classified under paragraph 1106 of the Tariff Act of 1922 as "Wool * * * which has been advanced * * * beyond the washed or scoured condition, including tops, but not further advanced than roving" and duty at the rate of 33 cents per pound and 20 per centum ad valorem assessed accordingly. This liquidation was not protested, but subsequently the importer applied for permission to clean, sort, repack, or otherwise change in condition, but not to manufacture, 14 bales of the wool under the provisions of section 562 of the Tariff Act of 1922, the predecessor of section 562 of the present act. Permission was granted, and upon the completion of the repacking, it was withdrawn from warehouse and entered for consumption.

The collector refused to reliquidate the entry, and protest was filed against such refusal and also claiming the merchandise to be dutiable at the rate of 31 cents per pound under the tariff classification in paragraph 1102 of the 1922 act for "Wools, not specially provided for * * * imported in the scoured state." There did not seem to be any question but that the condition of the merchandise at the time of the withdrawal was as claimed by the importer, although it did not appear that the repacking performed in warehouse had effected the change from wool further advanced than scoured, as originally classified, to wool in the scoured state only, as claimed.

The decision, in favor of the importer's claim, was by a divided court, but both the majority and the dissent agreed that reconditioning under section 562 in many cases would bring about a changed dutiable status, i. e., a changed classification of the merchandise. The difference of opinion related to the question of whether a change in dutiable status of the merchandise there involved had actually taken place, but the court was apparently unanimous in its construction of section 562 as requiring a reclassification if, in fact, the manipulation under that section changed the dutiable character of the merchandise.

It is argued by the plaintiff herein that the butts were not repacked and that section 562 operates only on the sherry, not the butts. Section 562 provides that merchandise may be "cleaned, sorted, repacked, or otherwise changed in condition," and it is difficult to see how the wine in the butts could be repacked without also changing the condition of the butts. When the butts were emptied they were no longer the usual containers of specific-duty merchandise; they did not contain anything.

Further, if the contention of the plaintiff were upheld, and the dutiable status of the butts were determined to be that of the usual con-

tainers of specific-duty merchandise, it would have been possible to export the repacked wine under the provisions of section 562 without the payment of duties, and to withdraw the butts and mingle them with the commerce of this country, also without payment of duty. This certainly was not the intent of Congress.

In view of what we have said heretofore with respect to the fact that specific duties are usually fixed by the Congress with the cost or value of the containers thereof in mind, it may be argued that a manifest injustice is rendered by holding the butts here in question subject to ad valorem duties. This situation, however, is very like that which obtained in the case of *Minneapolis Cold Storage Co.* v. *United States*, 9 Ct. Cust. Appls. 225, T. D. 38200. There, quarters of beef were imported accompanied, but not covered by, certain sacks, which were the usual coverings for such class of merchandise. The beef was allowed free entry, but the sacks were assessed with duty, although there was no question but that if they had actually covered the beef they would have been entitled to free entry as the usual coverings of duty-free merchandise.

It was held that at the time when the classification of the sacks was determinable they were not, in fact, the usual coverings of duty-free merchandise, and hence were subject to the same duties as if imported separately. So in the case at bar. At the time when classification of the butts was determinable, to wit, at the time of withdrawal thereof, they were not, in fact, the usual containers of specific-duty merchandise, and hence take classification as if imported separately.

The protest claim is therefore overruled, and judgment will issue accordingly.

### CONCURRING OPINION

COLE, Judge: I concur in the conclusion and judgment in this case, but in doing so I am influenced largely by the reasoning employed in two cases which are not included in the majority opinion.

In the well-known "Five Per Cent Cases," 6 Ct. Cust. Appls. 291, T. D. 35508, the court said: "The purpose of tariff laws, generally speaking, is to provide that the dutiable status of imported merchandise is to be determined at the time it enters into the commerce of the country." "So long as merchandise remains under bond for warehousing in the tariff sense and for assessment of duties, its importation has not been completed. Indeed, it may never be completed; hence warehoused goods are for tariff purposes future importations."

*Stone & Downer et al.* v. *United States*, 19 Ct. Cust. Appls. 259, T. D. 45388, emphasized the same rule in the following language: "No principle is better settled in this court than the one that goods in

bonded warehouses are not to be considered as imported until a permit of delivery has been issued and they enter into the commerce of the country."

The facts in this case justify application of the principle laid down in the two aforementioned cases, and taken into consideration with the cases cited by Judge Mollison, fully support the conclusion reached.